**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gail Ann Cruz, | No. CV-19-04460-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 11, "Pl. Br."), the Commissioner's Response (Doc. 14, "Def. Br."), Plaintiff's Reply (Doc. 15, "Reply"), and the Administrative Record (Doc. 10, "R."). For the following reasons, the decision is reversed and remanded for further administrative proceedings.

## I.   BACKGROUND

Some years ago, Plaintiff was the victim of a tragic accident in which a ceiling fan fell on her head causing significant contusions and "an unusual chronic pain problem" that has persisted ever since.[1] (R. at 357.) Plaintiff filed an application for benefits on

---

[1]     It is not clear when this accident actually occurred. The Commissioner's decision states both that it happened in 2005 and in 1995. (R. at 18–19; *see* R. at 1129.) Medical records from February 2009 note that the accident happened "about six years ago," *i.e.*, around 2003, while others from February 2012 note that it happened "approximately 16 years ago," *i.e.*, around 1996. (*Id.* at 357, 683.) The precise date is immaterial.

November 11, 2014, alleging disability as of November 30, 2010 due to impairments of trigeminal neuralgia, atypical facial pain, and TMJ, which she attributes to the accident. (*Id.* at 13, 18, 215.) Following denial of the application at the initial and reconsideration levels, a hearing before an administrative law judge ("ALJ") was held. (*Id.* at 13, 28–69.) The ALJ found Plaintiff not disabled in a written decision that became final when the Appeals Council denied review. (*Id.* at 13–21, 1–3.) Therein, the ALJ found Plaintiff had "severe"[2] impairments of status-post remote cerebral trauma, trigeminal neuralgia, occipital neuralgia, temporal mandibular joint (TMJ) syndrome, headaches, cervicalgia, atypical facial pain, degenerative disc disease of the spine, degenerative joint disease, and status-post vaginal prolapse. (*Id.* at 15.) Despite these impairments, the ALJ found:

> [Plaintiff] had the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b). She can do light work with frequent climbing of ramps and stairs and occasional climbing of ladders. She can occasionally balance, stoop, kneel, and crouch. She can never climb ropes or scaffolds and never crawl. She must avoid concentrated exposure to loud noise environments, vibrations, and hazards including unprotected heights and moving machinery.

(*Id.* at 17.) Based on this RFC assessment and testimony from a vocational expert ("VE"), the ALJ found Plaintiff could perform past relevant work as a school secretary and teacher's assistant and was therefore not disabled. (*Id.* at 20–21.)[3]

## II.   LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court reviews only issues raised by the party challenging the decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998)

---

[2]   An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[3]   The Commissioner details a set of facts not contained in this record. (*See* Def. Br. at 1.) For instance, contrary to the Commissioner's assertion, the present case was never granted review or remanded by the Appeals Council. Moreover, the record contains only one ALJ decision. While these particular facts are largely immaterial, the Court reminds the Commissioner of his obligations under Federal Rule of Civil Procedure 11(b)(3).

("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675. "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Finally, [the Court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Such is the case where the error is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his or her] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at the fifth. *Molina*, 674 F.3d at 1110. At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a

"severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

### A.   The ALJ Committed Reversible Error In Evaluating The Medical Opinion Evidence.

Plaintiff's first assignment of error is that the ALJ improperly rejected statements and opinions from treating sources: FNP Deanna Gray (R. at 384–87), Dr. Alfred Rossum (*id.* at 1106), and Dr. Sanjay Patel (*id.* at 1123–41). (Pl. Br. at 15–19; R. at 20.). In turn, "the Commissioner concedes that the ALJ should have explained what he meant by 'partial weight' when addressing the treating medical opinions because some of the limitations contained in those opinions conflict with the [RFC]." (Def. Br. at 2.) Given the Commissioner's concession, the Court finds reversible error in the ALJ's analysis of the medical opinion evidence to the extent that the ALJ failed to consider and/or properly reject statements from FNP Gray and Dr. Patel.[4] (R. at 384–87, 1123–41; *see also* R. at 424.)

---

[4]      Contrary to Plaintiff's assertion, the ALJ was not obligated to include "a need to elevate the legs [when sitting] in the RFC finding," a restriction allegedly assessed by Dr. Rossum that would direct a finding of disability per VE testimony. (Pl. Br. at 16–17; R. at 1106, 67.) Dr. Rossum's statement does not establish the existence of such a restriction. Dr. Rossum merely "recommended" that Plaintiff elevate her legs when sitting. He did not state it was necessary for work nor did he assess Plaintiff's residual functional capacity. (R. at 1106.) As such, the ALJ was not obligated to address this statement as a "medical opinion." *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements . . . that reflect judgments

**B.      The ALJ Committed No Harmful Error In Discounting Plaintiff's Subjective Allegations.**

Plaintiff's next assignment of error is that the ALJ improperly rejected her pain and symptom testimony. (Pl. Br. at 19–22.) Absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Finally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a

---

about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Moreover, with this recommendation, Dr. Rossum had noted that Plaintiff "remains asymptomatic" and "will continue with conservative management." (*Id.*)

factor that the ALJ can consider in his [or her] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ noted that Plaintiff alleged disability due to debilitating facial pain; migraines; and pain in her neck, shoulder, and back. (R. at 18; *see* R. at 282–83, 255–62, 270.) He further noted Plaintiff's allegations that her pain was "easily triggered" and "exacerbated by simple things such as bending over, riding in a car, grooming her hair, or loud noises" and impeded "her ability to sleep, turn her neck, and perform activities of daily living including her ability to lift, walk, bend, talk, concentrate, comprehend, and remember." (*Id.* at 18.) The ALJ discounted Plaintiff's allegations, finding them inconsistent with the medical and other evidence of record. (*Id.* at 20.) First, the ALJ noted that "treatment options she pursued, although not completely restorative, were relatively successful in reducing the frequency and severity of her symptoms and migraines such that she remained independent, active, and reasonably able to perform physical activities." (*Id.* at 19.) He noted that Plaintiff had "some success with traditional pain medication, muscle relaxers, occipital nerve block treatments, and later methadone," and that following the addition of methadone to her treatment regimen Plaintiff "described her pain levels as being 'very livable.'" (*Id.*) Second, the ALJ noted that Plaintiff "walks without an assistive device and is able to perform light household chores and cleaning, shop, and drive a car." (*Id.*) He further noted that "when feeling well, she is able to walk for up to 30 minutes at a time, ride a bike, spend time with friends and family, take airline flights or travel, sew, and play with her grandchildren." (*Id.*) Third and lastly, the ALJ cited mostly normal clinical findings, including normal gait, muscle tone, strength, and reflexes; an "unremarkable" MRI of her brain; intact sensation and cranial nerves; "only mildly reduced" range of motion in her cervical spine"; "preserved" range of motion in her lumbar spine; a negative straight leg-raise test; an "essentially normal" Circle of Willis[5] examination; and normal function of her respiratory, cardiovascular, and otolaryngology systems. (*Id.* (citing

---

[5]    A Circle of Willis examination tests for sufficient blood flow to the brain. (Def. Br. at 6 n.5.)

1    records).) Plaintiff disputes the validity of some of these findings and the ALJ's reliance

2    on them to discount her allegations.

3    First, Plaintiff asserts that her daily activities are not actually inconsistent with her

4    allegations of disability. (Pl. Br. at 20–21.) She "freely admits she is able to do a few

5    activities on her good days" but maintains that "unpredictable flares of pain and lack of

6    sleep on bad days take hours to go away and would result in absences from the workplace

7    or an inability to pay attention consistent with disability." (*Id.* (citing R. at 58–63.) The

8    Court finds error. The ALJ fails to adequately show that Plaintiff engages in activities that

9    are inconsistent with her allegations of disabling symptoms. For instance, just because

10   Plaintiff may engage in simple household chores and walk without an assistive device does

11   not mean that she does not experience debilitating migraines or other pain. The Court sees

12   no relationship between Plaintiff's ability to walk unassisted and her allegations of

13   debilitating migraines or neck, back, and shoulder pain. This logic extends to the other

14   activities identified by the ALJ. Moreover, the ALJ found that Plaintiff's ability to take

15   airline flights rendered her allegations less than credible yet medical records note that

16   flying "increases her pain." (*Id.* at 341.) Because the activities identified by the ALJ are

17   not incongruent with Plaintiff's allegations of disabling symptoms, they were not a valid

18   basis for discounting her allegations.

19   Next, Plaintiff disputes the purported inconsistencies between her allegations and

20   the objective medical evidence, arguing that the ALJ "does not identify any specific records

21   contrary to any of [her] specific statements regarding her limitations" and "has not

22   specified which testimony he found not credible." (Pl. Br. at 21.) The Court finds no error.

23   The ALJ identified particular allegations and clinical evidence–or lack thereof–that

24   undermined those allegations, including a variety of normal or remarkable clinical findings

25   and imaging studies. (R. at 19 (citing records).) While not every clinical finding noted by

26   the ALJ bears a logical connection to each of Plaintiff's allegation–*e.g.*, the Court sees no

27   apparent incongruity between a normal gait and debilitating migraines–some findings do

28   detract from the alleged severity of Plaintiff's symptoms. For instance, Plaintiff's

neurologist believed that her trigeminal neuralgia could potentially be the result of a vascular anomaly causing compression of her trigeminal nerve. (*Id.* at 355–56.) To determine if this was the case, the neurologist ordered an MRI and MRA of Plaintiff's brain. (*Id.*) The results of these studies were normal and showed no compression of the trigeminal nerve or vascular anomaly. (*Id.* at 353, 710.) Additionally, the ALJ noted that Plaintiff's cranial nerves were intact, a further lack of supportive objective evidence. (*Id.* at 711, 472, 351.) While the ALJ did not meticulously juxtapose each clinical finding with a particular allegation, the Court can nonetheless reasonably discern the ALJ's path based on his summary of the evidence and Plaintiff's allegations and conclude that his findings are supported by substantial evidence. (*See id.* at 18–19.)

Lastly, Plaintiff alleges that the ALJ erred by failing to consider the "waxing and waning nature of [her] condition and the frequency of her bad days, in addition to the side effects of her medications." (Pl. Br. at 21.) The Court finds no error. Earlier records show that Plaintiff tried a number of medications with little relief and/or adverse side effects. (*See, e.g.,* R. at 357, 478, 473.) However, Plaintiff was eventually referred to a pain specialist who prescribed methadone, a medication which reportedly made her pain "very livable." (*Id.* at 711, 683.) The pain specialist noted that with the methadone Plaintiff "experienced a great degree of relief," was "not having any excessive sedation," and was "very nicely controlled." (*Id.* at 683.) Months later, her neurologist similarly noted, "[T]he addition of methadone has been extremely powerful for her. This has allowed her to go get on with her life to a great degree." (*Id.* at 681, 679.) However, she did have an instance where her trigeminal neuralgia was exacerbated after she underwent surgery for a pelvic prolapse and was given a Medrol Dosepak for the increased pain. (*Id.* at 675–78, 693–94.) Despite the benefits of methadone, her pain specialist noted that "[s]he still does have good days and bad days." (*Id.* at 689.) However, it was also noted that the combination of methadone with her anti-neuropathic pain medications "ke[pt] her pain at bay to the point where she [wa]s able to function on most days." (*Id.* at 690.) Though her pain specialist opined that "either because of the side effects of the medication or the severity of her pain

she is a good candidate . . . for disability but the medications allow her to do her activities of daily living without as much difficulty and she seems relatively pleased with her current level of pain control." (*Id.* at 686.)

Later records show that Plaintiff moved from Ohio to Arizona and consequently transferred to a new pain specialist. (*Id.* at 868–69.) This new specialist had a policy against prescribing methadone, but offered to refer her to a provider that would. (*Id.* at 869.) However, Plaintiff declined and opted for a hydrocodone regimen.[6] (*Id.*) Experiencing minimal relief with the hydrocodone, Plaintiff was prescribed morphine in addition to hydrocodone. (*Id.* at 865–66.) Following addition of the morphine, Plaintiff rated her pain a '2' and felt "the addition of morphine was 'very successful' in stabilizing and reducing her level of pain." (*Id.* at 862.) She was "very pleased" and had taken "little hydrocodone since her last appointment." (*Id.*) She continued to experience relief from the morphine and felt that it "allowed her a quality of life that she has not had in years." (*Id.* at 855, 859, 852, 882.) She also denied side effects and tolerated the medications well. (*Id.* at 855, 846, 882, 1082.) Additionally, she underwent nerve block injections which provided 80% initial and 20% ongoing relief of her pain. (*Id.* at 1086.) Later injections continued to be "dramatically helpful in reducing her headache and occipital neuralgia symptoms." (*Id.* at 1082, 1366, 1340, 1826.)

Therefore, substantial evidence supports the ALJ's finding that Plaintiff's pain was not as debilitating as alleged based on the apparent effectiveness of medications and injection treatments in controlling it. Notably, Plaintiff does not dispute this effectiveness, alleging only that the ALJ did not consider the frequency of "bad days" and the side effects of medications. (*See* Pl. Br. at 20–21.) However, more often than not, the record shows that Plaintiff experienced substantial relief of her pain from medications and injections. Additionally, the record consistently shows that Plaintiff did not experience any significant side effects of her medication. Thus, the Court finds no error here.

---

[6] Plaintiff testified that she no longer took methadone after moving to Arizona because providers in Arizona allegedly "cannot" prescribe it. (R. at 61.) This assertion, however, is contradicted by the record. While the particular pain specialist that Plaintiff presented to had a policy against prescribing methadone, he nonetheless offered to refer her to a clinic that did prescribe it, which she had declined. (*Id.* at 869.)

In conclusion, while not every reason the ALJ proffered for discounting Plaintiff's allegations was valid, the ALJ did proffer some that were. Thus, any invalid reason is a harmless error. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that ALJ's reliance on a reason found invalid for rejecting claimant testimony was "harmless error" where ALJ had also relied on reasons found valid).

### C. The ALJ Committed No Error In His Analysis Of The Third-Party Witness Reports.

Plaintiff's third assignment of error is that the ALJ improperly rejected third-party reports submitted by her mother, husband, and friend. (Pl. Br. at 22–23; *see* R. at 225–32 [mother], 191–200 [husband], 202–10 [friend].) An ALJ may not disregard the testimony of a lay witness unless he or she gives "reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

The Court finds no error. First, the ALJ did not actually "reject" these reports. Rather, the ALJ stated that these reports "indicat[e] the presence of some symptoms and alleg[e] disabling limitations," which the ALJ found contradicted a consultative examining physician's opinion that Plaintiff had no severe impairments or limitations. (R. at 19, 1122.) Second, because these reports are similar to Plaintiff's own reports, which were properly discounted, it follows that these reports were also properly discounted. *See Valentine*, 574 F.3d at 694 (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

### D. The ALJ's Step Four Finding Is Not Supported By Substantial Evidence Because The ALJ Failed To Properly Consider Certain Medical Opinion Evidence.

Plaintiff's fourth and final assignment of error is that the ALJ's step four finding is not supported by substantial evidence because the ALJ failed to pose hypotheticals to the VE that contained limitations described by Plaintiff, the lay witnesses, and treating

providers. (Pl. Br. at 23–24.) As discussed, the ALJ erred for failing to properly consider medical opinions from treating providers. Thus, the step four finding is not supported by substantial evidence. However, the ALJ was not obligated to include limitations from Plaintiff's testimony and the third-party reports because that evidence was properly disregarded, as discussed.

## IV.   REMEDY

While the parties agree that the ALJ committed reversible error in his analysis of the medical opinion evidence, they disagree on the remedy for such error. Plaintiff requests a remand for calculation and award of benefits while the Commissioner requests a remand for further administrative proceedings to reevaluate the improperly rejected medical opinion evidence. (Pl. Br. at 18–19; Def. Br. at 2.) Plaintiff maintains that the improperly rejected medical opinions establish disability and the Court should credit them as a matter of law to find her disabled. (Pl. Br. at 18–19.) On the other hand, the Commissioner argues that "a judicial determination of disability [is] inappropriate" because the record contains conflicting medical opinion evidence that the ALJ needs to properly address and none of the improperly rejected opinions establish disability. (Def. Br. at 3–4.)

The Court may remand for further administrative proceedings, as is the "ordinary remand rule," or it may remand for calculation and award of benefits under the "credit-as-true" rule. *Treichler*, 775 F.3d at 1099–1100. However, the latter is "a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). For the Court to remand for award of benefits, three conditions must be satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even where each condition is satisfied, the Court may still

remand for further administrative proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Here, further proceedings would be useful given that none of the treating providers' medical opinions were meaningfully addressed. The Court is reluctant to credit such opinions as "true" and remand for immediate payment of benefits where there was no meaningful analysis of their credibility. The issue is thus best left to the ALJ, as the designated finder of fact, to determine whether any of the medical opinion evidence, when properly evaluated according to applicable regulatory standards, establishes disability.

**IT IS THEREFORE ORDERED,** reversing the decision of the Commissioner and remanding for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED,** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 1st day of July, 2020.

Honorable John J. Tuchi
United States District Judge